## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAY FRECHTER, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> PENN WEST PETROLEUM LTD., MURRAY R. NUNNS, DAVID E. ROBERTS, AND TODD H. TAKEYASU, <br><br> Defendants. | Civil Action No. 14 CV  6046 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> JUDGE KOELTL |

Plaintiff Jay Frechter ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters. Plaintiff's allegations are based on the investigation conducted by Plaintiff's attorneys, which included, among other things: (a) a review and analysis of Penn West Petroleum Ltd.'s ("Penn West" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"); (b) a review and analysis of certain press releases, public statements, and other publications disseminated by or concerning Penn West and the defendants named herein and related parties; (c) a review and analysis of Penn West's press conferences, analyst conference calls, conferences, presentations, and corporate website; and (d) a review and analysis of other publicly available information concerning Penn West and the defendants named herein.

## I.     SUMMARY OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons or entities who purchased shares of Penn West common stock on the New York Stock Exchange ("NYSE") from May 1, 2012 through July 29, 2014 (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies

under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

2.      Penn West is one of the largest conventional oil and natural gas producers in Canada.  The Company operates a significant portfolio of opportunities with a dominant position in light oil in Canada on a land base encompassing approximately five million acres.

3.      During the Class Period, defendants filed with the SEC materially false and misleading financial statements, which understated operating costs and overstated capital expenditures and royalty expenses.  These metrics were manipulated as a result of the Company's improper accounting practices, involving the improper capitalization of certain operating costs as property, plant and equipment; the income statement classification of certain costs and credits; and the timing of certain accruals relating to production, operating costs and capital.

4.      Defendants knew, or recklessly disregarded the truth that, Penn West had misstated its accounting metrics by reducing operating costs and increasing the Company's reported capital expenditures and royalty expenses.

5.      On July 29, 2014, after the markets closed, Penn West disclosed that it was conducting an internal review of certain of its accounting practices and had "concluded that certain of [its] historical financial statements [from 2012 and 2013] . . . must be restated," and likely several more years' worth of additional financial statements also would need to be restated.  Penn West explained that its internal review was ongoing and was focused on certain accounting metrics "which appear to have been made to reduce operating costs and increase the Company's reported capital expenditures and royalty expense, and that appear to have been made without adequate supporting documentation."

6.      Specifically, Penn West's internal investigation has thus far revealed that for the

2

fiscal years 2012 and 2013 the Company "reclassified . . . without adequate support" approximately $181 million (this and all future references to "$" or "dollar(s)" refers to Canadian dollars, unless otherwise indicated) in operating expenses as capital expenditures, and had "incorrectly reclassified" for each year approximately $100 million in additional operating expenses as royalty expenses. Penn West added that, "[t]hese accounting practices appear to have existed in prior years, with the amounts varying from year to year" and that, therefore, its "historical financial statements and related audit reports and [management's discussion and analysis] should not be relied upon." Moreover, Penn West revealed that it had identified the senior finance and accounting personnel it believed were responsible for the "adoption and use of these practices" and, without disclosing their identities, noted that these individuals "have ceased to be employed by the Company."

7.      Penn West also anticipated that it may need to reduce its capital expenditure and royalty expense guidance and increase its operating cost assumptions for 2014, which would in turn reduce the Company's 2014 fund flow assumptions and delay the release of its financial results for the second quarter, 2014. Furthermore, Penn West revealed that it "may not be, or may cease to be, in compliance with certain of its [debt] covenants" and had "initiated discussions with lenders" and note holders "regarding the potential impact of these matters and the possible waivers of affected covenants."

8.      On this news, Penn West common stock declined $1.30 per share (in U.S. dollars) or more than 14%, to close at $7.85 per share on July 30, 2014. Moreover, Penn West traded approximately 19 million shares on July 30, 2014—approximately 9 times average daily volume during the Class Period—further reflecting the significance of the revelations to investors.

## II.      JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

11.    Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Penn West conducts business in this District.  Among other things, Penn West's common shares traded on the NYSE, located within this District.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## III.    **THE PARTIES**

13.    Plaintiff Jay Frechter purchased Penn West common stock in reliance on defendants' materially false and misleading statements and omissions of material facts and the integrity of the market for Penn West common stock at artificially inflated prices during the Class Period, and was damaged when the truth about Penn West that was misrepresented and omitted during the Class Period was revealed to the market.  The certification of Jay Frechter, with a listing of his transactions in Penn West common stock during the Class Period, is filed with this Complaint as Exhibit 1.

14.    Defendant Penn West is one of the largest conventional oil and natural gas producers in Canada.  The Company participates in the exploration for, and the development and production of, oil and natural gas principally in western Canada.  Penn West's operation are currently focused on light-oil development.  The Company is headquartered in Calgary, Alberta and its shares are listed on the NYSE under the symbol "PWE" and on the Toronto Stock Exchange

#180586v3

("TSE") under the ticker symbol "PWT."

15.     Defendant Murray R. Nunns ("Nunns") was Penn West's President and Chief Executive Officer from August 9, 2011 through June 19, 2013.

16.     Defendant David E. Roberts ("Roberts") has served as Penn West's President, Chief Executive Officer, and as a director since June 19, 2013.

17.     Defendant Todd H. Takeyasu ("Takeyasu") was Penn West's Executive Vice President and Chief Financial Officer from February 2008 through March 24, 2014.

18.     Defendants Nunns, Roberts, and Takeyasu are collectively referred to herein as the "Individual Defendants." The Individual Defendants and Defendant Penn West are collectively referred to herein as the "Defendants."

## IV.     CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of a Class, consisting of all persons who purchased Penn West common stock on the NYSE during the Class Period and who were damaged thereby.

20.     This action is brought pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

21.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are potentially thousands of members in the proposed Class. During the Class Period, approximately 493 million shares of Penn West common stock were outstanding. The proposed Class may be identified from records maintained by Penn West or its transfer agent and may be notified of the pendency of this action by mail using a form of notice similar to that customarily used in securities class actions.

22.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff

5

purchased Penn West common stock on the public market during the Class Period and was damaged by Defendants' violations of the Exchange Act. All members of the Class are similarly affected by Defendants' wrongful conduct.

23.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with the Class he seeks to represent.

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.  whether Sections 10(b) or 20(a) the Exchange Act, or Rule 10b-5 promulgated thereunder, were violated by Defendants' acts as alleged herein;

b.  whether Penn West's filings with the SEC, including its quarter-end and year-end reports, the documents referenced therein, and/or subsequent public statements by Defendants on behalf of Penn West were materially false or misleading;

c.  whether Defendants acted with scienter in misrepresenting and/or omitting to state material facts;

d.  whether the market price of Penn West common stock was artificially inflated due to the material misrepresentations and/or non-disclosures complained of herein; and

e.  to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

6

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## V.      FACTUAL ALLEGATIONS

### A.      Defendants' False and Misleading Statements during the Class Period

First Quarter 2012 Financial Results

26.     On May 4, 2012, Penn West announced its financial results for the first quarter 2012, ended March 31, 2012 (and filed same on Form 6-K with the SEC).  The Form 6-K contained two certifications signed by Defendants Nunns and Takeyasu.  These certifications provided that the undersigned had "reviewed" the Form 6-K and MD&A and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

27.     Penn West announced that its funds flow[1] for the first quarter of 2012 was $337 million, compared to $356 million in the comparative period in 2011, an 8% decrease.  Capital expenditures for the first quarter of 2012 totaled $338 million, compared to $436 million in the comparative period in 2011, a 22% decrease.

---

[1] Penn West's management's discussion and analysis ("MD&A") defines "funds flow" as a "Non-GAAP measure" that is "cash flow from operating activities before changes in non-cash working capital and decommissioning expenditures."  "Funds flow is used to assess our ability to fund dividend and planned capital programs."  Its first quarter Form 6-K defines "payout ratio" as the calculation of dividends paid divided by funds flow.  "We use payout ratio to assess the adequacy of retained funds flow to finance capital programs."

28.     Netbacks[2] per barrels of oil equivalent ("boe") were $27.34, compared to $29.56 per boe in the comparative period in 2011, an 8% decrease.  Operating expenses per boe accounted for $17.93 (and reduced netbacks per boe by this amount) in the first quarter of 2012, compared with $15.92 in the comparative period in 2011, a 13% increase.  Royalties per boe accounted for $10.59 (and reduced netbacks per boe by this amount) in the first quarter of 2012, compared with $10.04 in the comparative period in 2011, a 5% increase.

29.     The Company stated in its first quarter 2012 MD&A discussion of its "Business Strategy" that, in accordance with its "corporate strategy" of "provid[ing] shareholder return through a combination of growth and yield," it had "provide[d] shareholder return through a dividend."  The Company also stated that, throughout this period, it had "maintained capital discipline, increased the term of [its] debt capital and disposed of non-core assets to partially fund [its] capital programs while conserving [its] balance sheet."

Second Quarter 2012 Financial Results

30.     On August 10, 2012, Penn West announced its financial results for the second quarter 2012, ended June 30, 2012 (and filed same on Form 6-K with the SEC).  The Form 6-K contained two certifications signed by Defendants Nunns and Takeyasu.  These certifications provided that the undersigned had "reviewed" the Form 6-K and MD&A and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes

---

[2] Penn West's MD&A defines "netbacks" as a "Non-GAAP measure" that is "the per unit of production amount of revenue less royalties, operating costs, transportation and realized risk management used in capital allocation decisions and to economically rank projects."  Its first quarter Form 6-K further defines "netback" as "a per-unit-of-production measure of operating margin used in capital allocation decisions, to economically rank projects."  The "unit" of production measure is "boe."

8

to the Company's internal control over financial reporting.

31.     Penn West announced that its funds flow for the second quarter of 2012 was $272 million, compared to $396 million in the comparative period in 2011, a 33% decrease.  The Company also announced that its capital expenditures for the second quarter of 2012 totaled $310 million, compared to $240 million in the comparative period in 2011, a 29% increase.

32.     Netbacks per boe were $23.84, compared to $32.60 per boe in the comparative period in 2011, a 27% decrease.  Operating expenses per boe accounted for $17.16 (and reduced netbacks per boe by this amount) in the second quarter of 2012, compared with $18.79 in the comparative period in 2011, a 9% decrease.  Royalties per boe accounted for $9.84 (and reduced netbacks per boe by this amount) in the second quarter of 2012, compared with $12.01 in the comparative period in 2011, an 18% decrease.

33.     The Company stated in its second quarter 2012 MD&A discussion of its "Business Strategy" that, "[i]n addition to our light-oil growth, our dividend offers shareholders a return during times of market volatility.  We will continue to work through our light-oil development plans with continued attention on cost optimization in the second half of 2012."

Third Quarter 2012 Financial Results

34.     On October 17, 2012, Penn West announced that it had agreements in principle to dispose of approximately $1.3 billion of its non-core properties, with combined production of approximately 12,000 barrels of oil equivalent per day.  Penn West stated that it planned to use the proceeds of the dispositions to "repay a portion of advances under its credit facilities."  The Company anticipated that these dispositions would close prior to December 31, 2012.  In later filings discussing these asset sales, including a Form 6-K filed with the SEC on November 6, 2011, Penn West stated that the asset sales provided it with "operational and financial flexibility,

allowing the Company to maintain its dividend while applying capital to high rate of return projects in its portfolio."

35.     On November 2, 2012, Penn West announced its financial results for the third quarter 2012, ended September 30, 2012 (and filed same on Form 6-K with the SEC).  The Form 6-K contained two certifications signed by Defendants Nunns and Takeyasu.  These certifications provided that the undersigned had "reviewed" the Form 6-K and MD&A and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

36.     Penn West announced that its funds flow for the third quarter of 2012 was $344 million, compared to $348 million in the comparative period in 2011, a 1% decrease.  The Company also announced that its capital expenditures for the third quarter of 2012 totaled $405 million, compared to $481 million in the comparative period in 2011, a 16% decrease.

37.     Netbacks per boe were $28.28, compared to $28.83 per boe in the comparative period in 2011, a 2% decrease.  Operating expenses per boe accounted for $16.78 (and reduced netbacks per boe by this amount) in the third quarter of 2012, compared with $17.49 in the comparative period in 2011, a 4% decrease.  Royalties per boe accounted for $9.74 (and reduced netbacks per boe by this amount) in the third quarter of 2012, compared with $10.87 in the comparative period in 2011, a 10% decrease.

38.     The Company stated in its third quarter financial results press release that its "strategy" "[i]n the near term," is to remain "committed to optimizing capital and operational efficiencies and providing dividend income to our shareholders."

Fourth Quarter 2012 Financial Results

39.    On November 6, 2012, Penn West announced that certain of its senior management—Hilary Foulkes, Executive Vice President and Chief Operating Officer; Thane Jensen, Senior Vice President, Operations Engineering; James Burns, Vice President, Corporate Planning; and Wendy Henkelman, Vice President, Treasury—had "left the organization effective immediately."   The Company did not explain the reason for the departure of its senior management, except to state that "[w]e will continuously make the necessary changes to deliver on our business plan."

40.    On January 9, 2013, Penn West announced its 2013 capital budget.  Penn West stated that its "strategic goals" included "balanc[ing] appraisal of its significant resource base with a meaningful dividend" and, in 2013, Penn West "plans to remain committed to the dividend model[.]"  Penn West added that its "significant hedging portfolio in crude oil and natural gas for 2013 . . . provides for greater certainty of cash flow to support our capital and the dividend programs."  Penn West also stated that, as a result of its recent divestment of over $1.3 billion in non-core properties, its current indebtedness outstanding on its credit facility was approximately $800 million with remaining capital of approximately $2.2 billion.

41.    On February 14, 2013, Penn West announced its financial results for the fourth quarter 2012, ended December 31, 2012 (and filed same on Form 6-K with the SEC).  Penn West announced that its funds flow for the fourth quarter of 2012 was $295 million, compared to $437 million in the comparative period in 2011, a 33% decrease.  The Company also announced that its capital expenditures for the fourth quarter of 2012 totaled negative $916 million, compared to $583 million in the comparative period in 2011.  However, this negative number was due to the Company's significant asset dispositions—of over $1.3 billion in non-core properties—that was

11

completed during the fourth quarter 2012.

42.     Netbacks per boe were $26.84, compared to $32.78 per boe in the comparative period in 2011, an 18% decrease. Operating expenses per boe accounted for $17.16 (and reduced netbacks per boe by this amount) in the fourth quarter of 2012, compared with $17.48 in the comparative period in 2011, a 2% decrease. Royalties per boe accounted for $10.10 (and reduced netbacks per boe by this amount) in the fourth quarter of 2012, compared with $11.47 in the comparative period in 2011, a 12% decrease.

43.     The Company stated in its fourth quarter financial results press release that in 2013 it would continue to implement its "strategy" of "maximizing the efficiency of our capital programs and the reliability of our production base while continuing to improve the balance sheet," including through disposing of non-core asset properties and investment in light-oil reserves[.]" The company added: "These strategies achieve a balance that provides our shareholders with a meaningful dividend as we demonstrate the value inherent in Penn West."

2012 Annual Report and Audited Financials

44.     On March 15, 2013, Penn West filed its 2012 annual report and audited consolidated financial statements on a Form 40-F with the SEC, which was signed by Defendant Nunns. The Form 40-F contained two signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Nunns and Takeyasu. These certifications provided that the undersigned had "reviewed" the Form 40-F and related filings and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

45.     The Form 40-F also contained a separate statement of "additional disclosure"

concerning "disclosure controls and procedures," which provided:

> As of the end of Penn West Petroleum Ltd.'s ("Penn West") fiscal year ended December 31, 2012, an evaluation of the effectiveness of Penn West's "disclosure controls and procedures" (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) was carried out by the management of Penn West, with the participation of the President & Chief Executive Officer ("CEO") and the Executive Vice President and Chief Financial Officer ("CFO") of Penn West. Based upon that evaluation, the CEO and CFO have concluded that as of the end of that fiscal year, Penn West's disclosure controls and procedures were effective to ensure that information required to be disclosed by Penn West in reports that it files or submits under the Exchange Act is (i) recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission (the "Commission") rules and forms and (ii) accumulated and communicated to the management of Penn West, including the CEO and CFO, to allow timely decisions regarding required disclosure.
>
> *    *    *
>
> Management is responsible for establishing and maintaining adequate internal control over Penn West's financial reporting. Penn West's internal control system was designed to provide reasonable assurance that all transactions are accurately recorded, that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that Penn West's assets are safeguarded.
>
> Management has assessed the effectiveness of Penn West's internal control over financial reporting as at December 31, 2012. In making its assessment, management used the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") framework in Internal Control – Integrated Framework to evaluate the effectiveness of Penn West's internal control over financial reporting. Based on this assessment, management has concluded that Penn West's internal control over financial reporting was effective as of December 31, 2012.
>
> The effectiveness of Penn West's internal control over financial reporting as at December 31, 2012 has been audited by KPMG LLP, as stated in their Report of Independent Registered Public Accounting Firm on Penn West's internal control over financial reporting that accompanies Penn West's Audited Consolidated Financial Statements for the fiscal year ended December 31, 2012, filed as Exhibit 99.3 to this Annual Report on Form 40-F.
>
> *    *    *
>
> There were no changes in Penn West's internal control over financial reporting that occurred during the fiscal year ended December 31, 2012 that have materially affected, or are reasonably likely to materially affect, Penn West's internal control over financial reporting.

46.    The 2012 Annual Report and Audited Financials provided that Penn West's funds

13

flow for the year ended 2012 was $1,248, compared to $1,537 million for the year ended 2011. Total capital expenditures were $137 million for the year ended 2012, compared to $1,866 million for the year ended 2011.

47.     Netbacks per boe were $26.58 for the year ended 2012, compared to $30.95 per boe for the year ended 2011.  Operating expenses per boe accounted for $17.26 (and reduced netbacks per boe by this amount) for the year ended 2012, compared to $17.40 for the year ended 2011.  Royalties per boe accounted for $10.07 (and reduced netbacks per boe by this amount) for the year ended 2012, compared to $11.09 for the year ended 2011.

48.     The Company's net debt-to-funds flow ratio was 2.5 for the year ended 2012, compared to 2.5 for the year ended 2011.[3]  The Company's sustainability ratio was 172% for the year ended 2012, compared to 141% for the year ended 2011.[4]

First Quarter 2013 Financial Results

49.     On May 2, 2013, Penn West announced its financial results for the first quarter 2013, ended March 31, 2013 (and filed same on Form 6-K with the SEC).  The Form 6-K contained two certifications signed by Defendants Nunns and Takeyasu.  These certifications provided that the undersigned had "reviewed" the Form 6-K and MD&A and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's

---

[3] The "net debt to funds flow" ratio was first defined in Penn West's 2013 Year-End MD&A as "the ratio of our net debt to our 12 months trailing funds flow and is used to assess the appropriateness of the Company's level of leverage."  The 2013 Year-End MD&A also reported 2012 and 2011 net debt to fund flow ratios, from which the above numbers are taken.

[4] The "sustainability ratio" was first defined in Penn West's 2013 Year-End MD&A as "a comparison of a company's cash outflows (capital investment and dividends paid less DRIP) to its cash inflows (funds flow) and is used by the Company to assess the appropriateness of its dividend levels and the long-term ability to fund its development plans."  The 2013 Year-End MD&A also reported 2012 and 2011 sustainability ratios, from which the above numbers are taken.

14

internal control over financial reporting.

50.     Penn West announced that its funds flow for the first quarter of 2013 was $267 million, compared to $337 million in the comparative period in 2012, a 218% decrease.  Capital expenditures for the first quarter of 2013 totaled $418 million, compared to $338 million in the comparative period in 2012, a 24% increase.

51.     Netbacks per boe were $27.76, compared to $27.34 per boe in the comparative period in 2012, a 2% increase.  Operating expenses per boe accounted for $16.88 (and reduced netbacks per boe by this amount) in the first quarter of 2013, compared with $17.93 in the comparative period in 2012, a 6% decrease.  Royalties per boe accounted for $9.30 (and reduced netbacks per boe by this amount) in the first quarter of 2013, compared with $10.59 in the comparative period in 2012, a 12% decrease.

Second Quarter 2013 Financial Results

52.     On August 8, 2012, Penn West announced its financial results for the second quarter 2013, ended June 30, 2013 (and filed same on Form 6-K with the SEC).  The Form 6-K contained two certifications signed by Defendants Roberts and Takeyasu.  These certifications provided that the undersigned had "reviewed" the Form 6-K and MD&A and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

53.     Penn West announced that its funds flow for the second quarter of 2013 was $278 million, compared to $272 million in the comparative period in 2012, a 2% increase.  The Company also announced that its capital expenditures for the second quarter of 2013 totaled $83 million, compared to $310 million in the comparative period in 2012, a 73% decrease.

54.     Netbacks per boe were $30.68, compared to $23.84 per boe in the comparative period in 2012, a 29% increase.  Operating expenses per boe accounted for $16.83 (and reduced netbacks per boe by this amount) in the second quarter of 2013, compared with $17.16 in the comparative period in 2012, a 2% decrease.  Royalties per boe accounted for $10.32 (and reduced netbacks per boe by this amount) in the second quarter of 2013, compared with $9.84 in the comparative period in 2012, a 5% increase.

55.     Defendant Roberts, delivering the "President's Message," stated:

In the second quarter, Penn West continued to deliver operating results in line with expectations as we focused on reliable and repeatable performance from our asset base. Total production for the quarter averaged 140,083 boe per day with 63 percent being liquids. Funds flow of $278 million for the second quarter of 2013 was higher than the prior year due to narrowing WTI to Edmonton light sweet oil pricing differentials, which more than offset lower production as a result of asset dispositions closed in late 2012. Based on our performance to date, we can reiterate our expected production guidance for the year to deliver an annualized 135,000 to 145,000 boe per day in 2013. Capital expenditures for the year are expected at $900 million.

In addition to the strategic review of the Company being progressed by the Special Committee of the Board, we are actively streamlining and focusing our management and operating structure. To date in 2013, the Company has reduced its workforce by over 10 percent of full time equivalents including a realignment of responsibilities and significant reduction of personnel, including at the executive and management level. Further steps to improve our focus, accountability and cost model to allow us to achieve our goal to deliver best in class operating performance and shareholder returns are expected in the present quarter.

Third Quarter 2013 Financial Results

56.     On November 6, 2013, Penn West announced its long-term plan, which included implementing "effective cost control," "improving corporate and operating cost structure and low-risk opportunities" that will "enable the Company to deliver production and funds flow per share growth and largely fund its dividend and capital program from internally generated funds flow."

57.     Also on November 6, 2013, the Company announced its financial results for the

16

third quarter 2013, ended September 30, 2013 (and filed same on Form 6-K with the SEC).  The Form 6-K contained two certifications signed by Defendants Roberts and Takeyasu.  These certifications provided that the undersigned had "reviewed" the Form 6-K and MD&A and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

58.     Penn West announced that its funds flow for the third quarter of 2013 was $293 million, compared to $344 million in the comparative period in 2012, a 15% decrease.  The Company also announced that its capital expenditures for the third quarter of 2013 totaled $55 million, compared to $405 million in the comparative period in 2012, an 86% decrease.

59.     Netbacks per boe were $33.45, compared to $28.28 per boe in the comparative period in 2012, an 18% increase.  Operating expenses per boe accounted for $17.72 (and reduced netbacks per boe by this amount) in the third quarter of 2013, compared with $16.78 in the comparative period in 2012, a 6% increase.  Royalties per boe accounted for $11.42 (and reduced netbacks per boe by this amount) in the third quarter of 2013, compared with $9.74 in the comparative period in 2012, a 17% increase.

60.     The Company stated in its third quarter 2013 MD&A discussion of its "Business Strategy" that, "Our long-term plan aims to deliver to shareholders compound annual growth in oil production and funds flow subsequent to a de-levering period and provide shareholders a return through a sustainable dividend."

Fourth Quarter 2013 Financial Results

61.     On March 7, 2014, Penn West announced its financial results for the fourth quarter 2013, ended December 31, 2013 (and filed same on Form 6-K with the SEC).  Penn West

#180586v3

announced that its funds flow for the fourth quarter of 2013 was $216 million, compared to $295 million in the comparative period in 2012, a 27% decrease. The Company also announced that its capital expenditures for the fourth quarter of 2013 totaled negative $265 million, compared to negative $916 million in the comparative period in 2012. However, this negative number was due to the Company's significant asset dispositions that were completed during the fourth quarter 2013.

62.     Netbacks per boe were $26.66, compared to $26.84 per boe in the comparative period in 2012, a 1% decrease. Operating expenses per boe accounted for $17.86 (and reduced netbacks per boe by this amount) in the fourth quarter of 2013, compared with $17.16 in the comparative period in 2012, a 4% increase. Royalties per boe accounted for $10.13 (and reduced netbacks per boe by this amount) in the fourth quarter of 2013, compared with $10.10 in the comparative period in 2012, a negligible change.

63.     Defendant Roberts, delivering the "President's Message," stated:

> Four months ago, we began discussing a new vision for Penn West. We promised focus on the Company's industry leading light-oil positions in the Western Canada Sedimentary Basin; application of best-in-class operating practices; relentless cost control; and to de-lever the balance sheet to deliver shareholder value. We are pleased to say we are on plan.

<u>2013 Annual Report and Audited Financials</u>

64.     On March 7, 2014, Penn West filed its 2013 annual report and audited consolidated financial statements on a Form 40-F with the SEC, which was signed by Defendant Roberts. The Form 40-F contained two signed certifications pursuant to SOX by Defendants Roberts and Takeyasu. These certifications provided that the undersigned had "reviewed" the Form 40-F and related filings and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

18

65.   The Form 40-F also contained a separate statement of "additional disclosure" concerning "disclosure controls and procedures," which provided:

> As of the end of Penn West Petroleum Ltd.'s ("Penn West") fiscal year ended December 31, 2013, an evaluation of the effectiveness of Penn West's "disclosure controls and procedures" (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) was carried out by the management of Penn West, with the participation of the President & Chief Executive Officer ("CEO") and the Executive Vice President and Chief Financial Officer ("CFO") of Penn West. Based upon that evaluation, the CEO and CFO have concluded that as of the end of that fiscal year, Penn West's disclosure controls and procedures were effective to ensure that information required to be disclosed by Penn West in reports that it files or submits under the Exchange Act is (i) recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission (the "Commission") rules and forms and (ii) accumulated and communicated to the management of Penn West, including the CEO and CFO, to allow timely decisions regarding required disclosure.
>
> \*        \*        \*
>
> Management is responsible for establishing and maintaining adequate internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) for Penn West.
>
> Management, under the supervision and with the participation of the CEO and the CFO, has assessed the effectiveness of Penn West's internal control over financial reporting as at December 31, 2013. In making its assessment, management used the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") framework in Internal Control – Integrated Framework (1992) to evaluate the effectiveness of Penn West's internal control over financial reporting. Based on this assessment, management has concluded that Penn West's internal control over financial reporting was effective as of December 31, 2013.
>
> The effectiveness of Penn West's internal control over financial reporting as at December 31, 2013 has been audited by KPMG LLP, as stated in their Report of Independent Registered Public Accounting Firm on Penn West's internal control over financial reporting that accompanies Penn West's Audited Consolidated Financial Statements for the fiscal year ended December 31, 2013, filed as Exhibit 99.3 to this Annual Report on Form 40-F.
>
> \*        \*        \*
>
> In 2013, Penn West reduced its goodwill balance by \$54 million to reflect goodwill being associated with asset dispositions in prior years. Penn West made related enhancements to its methodology for associating goodwill to cash generating units and dispositions. No other changes in Penn West's internal control over financial reporting were made during the year ended December 31, 2013 that have materially affected, or are reasonably likely to materially affect, its internal control over financial reporting.

19

66.     The 2013 Annual Report and Audited Financials provided that Penn West's funds flow for the year ended 2013 was $1,054 million, compared to $1,248 million for the year ended 2012.  Total capital expenditures were $291 million for the year ended 2013, compared to $137 million for the year ended 2012.

67.     Netbacks per boe were $29.63 for the year ended 2013, compared to $26.58 per boe for the year ended 2012.  Operating expenses per boe accounted for $17.30 (and reduced netbacks per boe by this amount) for the year ended 2013, compared to $17.26 for the year ended 2012.  Royalties per boe accounted for $10.29 (and reduced netbacks per boe by this amount) for the year ended 2013, compared to $10.07 for the year ended 2012.

68.     The Company's net debt-to-funds flow ratio was 2.7 for the year ended 2013, compared to 2.5 for the year ended 2012.  The Company's sustainability ratio was 112% for the year ended 2013, compared to 172% for the year ended 2012.  The Company's Year-End MD&A stated:

> We anticipate our net debt to funds flow ratio to improve in future years as we continue to de-lever our balance sheet and focus on light-oil, higher return projects outlined in our five-year plan.
>
> Liquids weighting is important to increasing funds flow, as the netback on a boe basis is significantly higher than for natural gas. Our production weighting has remained relatively consistent over the past three years, as production additions from our light-oil focused development programs have been offset by non-core disposition activity. As we move forward, our long-term plan is to focus development in three main light-oil areas; the Cardium, Slave Point and Viking.
>
> One of the key strategies in our long-term plan is cost reduction to realize improvements in our netbacks which, in turn drives higher funds flow. The 2013 increase in netbacks compared to 2012 was primarily due to higher commodity prices while the decrease between 2012 and 2011 was attributed to lower commodity prices.
>
> We monitor our recycle ratio to ensure that our capital programs provide economic benefit to our shareholders. The improvement in recycle ratio in 2013 can largely

be attributed to a more focused capital program and cost improvements across our key light-oil plays which significantly reduced our F&D cost. The increase in our netback also contributed to the improvement.

Sustainability ratio is used to ensure our capital expenditures and dividend programs are appropriate relative to our capitalization. We have targeted for a 110 percent sustainability ratio in our long-term plan. In 2013, through a focus on operational excellence across our plays, we realized significant reductions to drilling costs and cycle times, which have a positive impact on this metric.

First Quarter 2014 Financial Results

69.     On April 30, 2014, Penn West announced its financial results for the first quarter 2014, ended March 31, 2014 (and filed same on Form 6-K with the SEC). The Form 6-K contained two certifications signed by Defendants Roberts and non-Defendant Jeffrey Curran (who was acting in the capacity of Chief Financial Officer). These certifications provided that the undersigned had "reviewed" the Form 6-K and MD&A and they contained no materially untrue statements or omissions; fairly present in all material respects the financial condition of the issuer; were accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

70.     Penn West announced that its funds flow for the first quarter of 2014 was $279 million, compared to $267 million in the comparative period in 2013, a 4% increase. Capital expenditures for the first quarter of 2014 totaled negative $8 million, compared to $418 million in the comparative period in 2013. However, this negative number was due to the Company's significant asset dispositions that were completed during the first quarter 2014.

71.     Netbacks per boe were $36.67, compared to $27.76 per boe in the comparative period in 2013, a 32% increase. Operating expenses per boe accounted for $17.66 (and reduced netbacks per boe by this amount) in the first quarter of 2014, compared with $16.88 in the comparative period in 2013, a 5% increase. Royalties per boe accounted for $12.05 (and reduced

21

netbacks per boe by this amount) in the first quarter of 2014, compared with $9.30 in the comparative period in 2013, a 32% increase.

72.     Defendant Roberts, delivering the "President's Message," stated:

Penn West's first quarter results are a clear step forward toward achieving the goals in our long-term plan. We continued our out-performance with the drill bit, further focused the portfolio and reduced leverage and are taking active steps to improve our business processes and cost structure.

73.     The statements referenced in ¶¶ 26-33, 35-38, 41-55, 57-72 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (i) the Company was understating operating costs and overstating capital expenditures and royalty expenses; (ii) the Company's improper accounting practices were causing Penn West to be at risk of non-compliance with certain of its debt covenants; (iii) the Company's internal controls were ineffective; and (iv) as a result of the above, the Company's financial statements filed with the SEC were materially false and misleading at all relevant times.

## VI.    **THE TRUTH EMERGES**

74.     On July 29, 2014, after the market closed, the Company issued a press release disclosing that the Company's Audit Committee is conducting an internal review of certain of its accounting practices involving "the capitalization of certain operating costs as property, plant and equipment, the income statement classification of certain costs and credits, and the timing of certain accruals relating to production, operating costs and capital."  As such, the Company's Board of Directors "has concluded that certain of the Company's historical financial statements and related management's discussion and analysis ("MD&A") must be restated."  Specifically, the Audit Committee is "examining certain entries which appear to have been made to reduce operating costs and increase the Company's reported capital expenditures and royalty expense,

22

and that appear to have been made without adequate supporting documentation." Thus far, the

Audit Committee's internal review has preliminarily concluded the following:

> For the fiscal year 2013, the Audit Committee and its independent advisors have identified approximately $70 million in operating expenses that were reclassified to property, plant and equipment as capital expenditures without adequate support. For the fiscal year 2012, (a) approximately $110 million in operating expenses were reclassified to property, plant, and equipment as capital expenditures without adequate support. As a result, the property, plant and equipment balances recorded on the Company's balance sheets in those fiscal years appear to be overstated.

> For each of the fiscal years 2012 and 2013, the Audit Committee and its independent advisors have identified approximately $100 million in operating expenses that were incorrectly reclassified as royalty expenses. The reclassification had no impact on net income or funds flow.

75.    Consequently, the Company will restate its audited annual financial statements

for at least the years ended December 31, 2012 and 2013 and its unaudited interim financial

statements for the three months ended March 31, 2014 and 2013" and all related MD&A. Further,

"the Company's historical financial statements and related audit reports and MD&A should not be

relied upon."

76.    The Company further disclosed the following in the press release:

> The Company currently expects that the effect of the restatement will be to reduce historical reported capital expenditures, property, plant and equipment balances, royalty expenses and depletion expense and increase operating expenses. The review and restatement may also require Penn West to reduce its capital expenditure guidance and royalty expense assumptions and increase its operating cost assumptions for 2014 from those originally disclosed in November 2013. These adjustments would in turn reduce the Company's 2014 funds flow assumptions.

> As a result of the identified accounting practices and the decision to restate certain historical financial results and/or the potential delay in reporting second quarter, 2014 financial results, the Company believes that it may not be, or may cease to be, in compliance with certain of its covenants under its unsecured, revolving syndicated bank facility and the terms of its senior unsecured notes, subject to any applicable cure periods. However, the Company believes that at no time did it fail to comply with the financial covenants contained in its bank facility and its senior unsecured notes. The Company has initiated discussions with lenders under its

bank facility and will be initiating discussions with holders of its senior unsecured notes regarding the potential impact of these matters and the possible waivers of affected covenants.

Subject to satisfactory resolution of these matters, and consistent with historical practices, the Company currently expects to declare its third quarter, 2014 dividend when it approves and files its second quarter, 2014 financial results.

The Company has voluntarily informed the Alberta Securities Commission (the "ASC") and the United States Securities and Exchange Commission (the "SEC") about its internal review.

As part of the process described above, the Company is re-examining its internal controls over financial reporting and disclosure controls and procedures in order to identify any material weaknesses with such controls and procedures.  As a result of the internal review, the Company will take all appropriate steps necessary to remedy any material weaknesses and to ensure that a similar situation is avoided in the future.

77.    Immediately, analysts reacted negatively to the revelations.   Indeed, Jeremy McCrea, analyst at AltaCorp Capital, Inc. stated the following in a news article[5]:

We're trying to figure out, was there an actual intent to deceive or was this just kind of a mistake because of different classifications of where things should have been?  With accounting rules there is a lot of flexibility to classify something as an operating cost or a capital cost.

If the intent in putting something on the capital side of things was to purposely increase your funds flow so you would be on side with your debt covenants, that's an issue.

78.    On this news, Penn West common stock declined $1.30 per share or more than 14%, to close at $7.85 per share on July 30, 2014.

## VII.   SCIENTER ALLEGATIONS

79.    The Individual Defendants were the most senior officers of Penn West during the Class Period and had final approval authority over the public statements issued in the name of the

---

[5] Rebecca Penty, *Penn West May Face Lawsuits for Accounting Irregularities*, (July 30, 2014), at http://www.bnn.ca/News/2014/7/30/Canadian-energy-giant-Penn-West-reveals-accounting-irregularities-.aspx.

Company.   Nunns and Roberts were the CEO of Penn West; Takeyasu was the Chief Financial Officer of Penn West.  The Individual Defendants were identified as approving or certifying the accuracy of Penn West's reported financial results and internal controls.  As discussed herein, the Company has admitted that many of those results were misstated and made "without adequate supporting documentation" and are now being restated or investigated for possible restatement. Defendant Nunns approved or certified the accuracy of the contents of Penn West's first quarter through third quarter 2012 Forms 6-K; the 2012 Year-End Form 40-F; and the first quarter 2013 Form 6-K.  Defendant Roberts approved or certified the accuracy of the contents of Penn West's second and third quarter 2013 Forms 6-K; and the 2013 Year-End Form 40.  Defendant Takeyasu approved or certified the accuracy of the contents of Penn West's first quarter through third quarter 2012 and 2013 Forms 6-K; and the 2012 Year-End Form 50-F.

80.    For fiscal 2013 (Nunns and Takeyasu) and fiscal 2014 (Roberts and Takeyasu) certified in Penn West's Form 40-F that they had "carried out" "an evaluation of the effectiveness of Penn West's 'disclosure controls and procedures,'" and that "[b]ased upon that evaluation, [they] have concluded that . . . Penn West's disclosure controls and procedures were effective to ensure that information required to be disclosed by Penn West in reports that it files or submits with the SEC."  In light of the magnitude of Penn West's subsequently reported lack of internal controls and errors in financial reporting, there is a strong inference that the individual defendants' certification of Penn West's internal controls were intentionally or knowingly false.

81.    Further, Penn West's July 29, 2014 press release stated that Penn West's review of its accounting practices and decision to restate certain historical financial statements had been initiated as the result of "accounting practices that came to the attention of" David Dyck, defendant Takeyasu's successor as Penn West's CFO.  That the matters under review were identified by Mr.

Dyck further establishes that these same "accounting practices" had previously been identified or but for his reckless disregard for the truth would have been identified by defendant Takeyasu.

82.     Penn West had reported operating expenses of $853 million and $1,019 million in 2013 and 2012, respectively.  The overstated operating expenses affected by the restatement were $70 million (2013), $111 million (2012), and $100 million (each of 2012 and 2013).  The total inflated expenses of $381 million were approximately 20% of total reported operating expenses of $1,872 million.  An overstatement of operating expenses of this magnitude must have been apparent to the most senior management of the company.

VIII.   **LOSS CAUSATION**

83.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Penn West common stock and operated as a fraud or deceit on Class Period purchasers of Penn West common stock by failing to disclose and misrepresenting the adverse facts detailed herein.  When Defendants' prior misrepresentations and fraudulent conduct were disclosed, or materialized, and became apparent to the market, the price of Penn West common stock fell precipitously.  As a result of their purchases of Penn West common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, i.e., damages, under the federal securities laws.

84.     By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of Penn West's business and prospects, financial position, and results of operations.  Defendants' false and misleading statements caused Penn West's common stock to trade at artificially inflated levels throughout the Class Period.

85.     The decline in value of the common was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the price decline of Penn West common stock negates any inference that the loss suffered by

#180586v3

Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme and caused the subsequent significant decline in the value of Penn West common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## IX.   INAPPLICABILITY OF STATUTORY SAFE HARBOR

86.     The statutory safe harbor provided for forward-looking statements under certain circumstances under the Private Securities Litigation Reform Act of 1995 does not apply to any of the allegedly false or misleading statements set forth in this Complaint. The statements alleged to be false or misleading herein relate to then-existing facts and conditions with respect to Penn West which were not fully, fairly, or adequately disclosed. In addition, to the extent certain of the statements alleged to be false or misleading may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, and there were no adequate, meaningful cautionary statements identifying relevant important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Cautionary language must truthfully address specific risks, must exhaust the capacity of the positive false statements to mislead investors, and must disclose, as defendants failed to do here, then existing adverse facts. Alternatively, to the extent that the statutory safe harbor is intended to or does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, Defendants had actual knowledge that the particular forward-looking statement was materially false or misleading. In addition, to the extent any of the statements set forth above were accurate when made, they became inaccurate or misleading because of subsequent events, and Defendants

27

failed to update those statements which later became inaccurate.

87.     The statutory safe harbor provided for forward-looking statements under certain circumstances, moreover, does not apply to false statements or material omissions of existing facts.

88.     Additionally, the safe harbor is statutorily inapplicable to the false, misleading, and incomplete annual financial statements of Penn West since they were reportedly prepared in accordance with generally accepted accounting principles.

## X.     APPLICABILITY OF PRESUMPTION OF RELIANCE:  FRAUD ON THE MARKET

89.     Plaintiff is entitled to a presumption of reliance because the claims asserted herein against Defendants are predicated in part upon false statements of material fact and/or the omission to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, that Defendants had a duty to disclose.

90.     At all relevant times, the market for Penn West common stock was an efficient market that promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in the prices of the Company's common stock.

91.     The market for Penn West common stock was efficient because, inter alia, throughout the Class Period:

    a.  Penn West common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

    b.  During the Class Period, there were approximately 493 million shares of Penn West common stock outstanding, millions of shares of Penn West common stock were traded on the open market; with trading in excess of a million shares a day on the vast majority of days during the Class Period;

28

c.  As a regulated issuer, Penn West filed periodic public reports with the SEC and the NYSE;

d.  Penn West regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as quarterly conference calls with investors, communications with the financial press and other similar reporting services, as well as presentations and various industry and market symposia and conferences; and

e.  Securities analysts followed and published research reports regarding Penn West that were publicly available to investors.  Each analyst wrote reports about Penn West that were distributed to the sales force and available to customers of their respective brokerage firms.  These reports were publicly available and entered the public marketplace.

92.  Throughout the Class Period, Penn West was consistently followed by the market, including securities analysts as well as the business press.  The market relies upon the Company's financial results and management to accurately present the Company's financial results.  During this period, Penn West and the Individual Defendants continued to pump materially false information into the marketplace regarding the financial condition of the Company.  This information was promptly reviewed and analyzed by the ratings agencies, analysts and institutional investors and assimilated into the price of the Company's common stock.

93.  As a result of the misconduct alleged herein (including defendants' misstatements and omissions of material facts), the market for Penn West's common stock was artificially inflated.  Under such circumstances, the presumption of reliance available under the "fraud-on-the

market" theory applies. Thus, Class members are presumed to have indirectly relied upon the misrepresentations and omissions of material facts for which defendants are each responsible.

94.    Plaintiff and other Class members justifiably relied on the integrity of the market price for the Company's common stock and were substantially damaged as a direct and proximate result of their purchases of Penn West common stock at artificially inflated prices and the subsequent decline in the price of the common stock when the truth was disclosed.

95.    The market for Penn West common stock promptly digested current information regarding Penn West from all publicly available sources and reflected such information in Penn West's common stock price. Under these circumstances, all purchasers of Penn West's common shares during the Class Period suffered similar injury through their purchase of shares at artificially inflated prices and a presumption of reliance applies.

## XI.    CAUSES OF ACTION

### COUNT I
### (Against All Defendants)
**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

96.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

97.    Throughout the Class Period, Defendants, directly or indirectly, engaged in a common plan, scheme and continuing course of conduct described herein, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and a course of business which operated as a fraud upon Plaintiff and the other members of the Class; made various false statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the Class; and employed manipulative or deceptive devices and contrivances in connection with the purchase and sale of Penn West common stock.

30

#180586v3

98.     The purpose and effect of Defendants' plan, scheme and course of conduct were to artificially inflate the price of Penn West common stock and to artificially maintain the market price of Penn West securities.

99.     Defendants had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with severely reckless disregard for the truth when it failed to ascertain and disclose the true facts in the statements made by it to members of the investing public, including Plaintiff and the Class, and the securities analysts.

100.    As a result of the foregoing, the market price of Penn West securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements concerning the Company's financial statements and operations, Plaintiff and the other members of the Class relied, to their damage, on the statements described above and/or the integrity of the market price of Penn West stock during the Class Period in purchasing Penn West common stock at prices which were artificially inflated as a result of Class's false and misleading statements.

101.    Defendants' concealment of this material information served only to harm Plaintiff and the other members of the Class who purchased Penn West common stock in ignorance of the financial risk to them as a result of such nondisclosures.

102.    As a result of the wrongful conduct alleged herein, when the truth concerning Defendants' false statements and omissions was revealed to the investing public and the artificial inflation in the price of Penn West common stock was, as a result, reduced and ultimately removed, in a series of corrective disclosures and/or the materialization of the concealed risks, Penn West's share price fell significantly and Plaintiff and other members of the Class suffered damages in an amount to be established at trial.

31

103.   By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and are liable to the Plaintiff and the other members of the Class for substantial damages that they suffered in connection with their purchase of Penn West common stock during the Class Period.

**COUNT II**
**(Against Individual Defendants)**
**Liability Pursuant to Section 20(a) of the Exchange Act**

104.   Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

105.   Each of the Individual Defendants, by virtue of their positions with Penn West and their specific acts, was a controlling person of Penn West within the meaning of Section 20(a) of the Exchange Act.

106.   They had the power and influence and exercised same to cause Penn West to engage in the illegal conduct and practices complained of herein.  Defendants were thereby and otherwise active and culpable participants in the fraud perpetrated by Defendants.

107.   By reason of the conduct of Penn West as alleged in this Complaint, the Individual Defendants are liable for the aforesaid wrongful conduct of Penn West and liable to Plaintiff and the Class for the substantial damages which they suffered in connection with their purchases or acquisitions of shares as a result of Penn West's violations of the Exchange Act.

108.   By reason of such conduct, Defendants are liable pursuant to Exchange Act Section 20(a).

## XII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

32

#180586v3

B.      Certifying Plaintiff as the Class Representatives and his counsel as Class Counsel;

C.      Declaring and determining that Defendants violated the federal securities laws by reason of their conduct as alleged herein;

D.      Awarding monetary damages against Defendants in favor of Plaintiff and the other members of the Class for all losses and damages suffered as a result of the acts and transactions complained of herein, together with prejudgment interest from the date of the wrongs to the date of the judgment herein;

E.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

F.      Granting such other and further relief as deemed appropriate by the Court.

## XIII.   <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: August 1, 2014

WOLF POPPER LLP

Robert C. Finkel
Patricia I. Avery
Fei-Lu Qian
Robert S. Plosky
845 Third Avenue
New York, NY 10022
Tel:  (212) 759-4600
Fax:  (212) 486-2093
rfinkel@wolfpopper.com
pavery@wolfpopper.com
fqian@wolfpopper.com
rplosky@wolfpopper.com

*Attorneys for Plaintiff*

33

# EXHIBIT 1

## PLAINTIFF CERTIFICATION
## UNDER THE FEDERAL SECURITIES LAWS

I, Jay Frechter, hereby state:

1.      I have reviewed a complaint against Penn West Petroleum, Ltd. ("Penn West") and certain officers and have authorized the filing of a complaint on my behalf.

2.      I am willing to serve as a representative party on behalf of the Class, as defined in the above-referenced complaint, including providing testimony at deposition and trial, if necessary.

3.      The following includes all of my transactions in Penn West securities during the period May 1, 2012 through July 29, 2014:

| TRANSACTION | TRADE DATE | PRICE | QUANTITY |
|---|---|---|---|
| Buy | 04/17/2014 | $ 8.187 per share | 89.09 |
| Buy | 07/16/2014 | $ 9.0384 per share | 83.532 |

4.      I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

5.      During the three-year period preceding the date of signing this certification, I have not sought to serve, and have not served, as a representative on behalf of a class in any private action arising under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, including lost wages relating to the representation of the Class.

7.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___1___ day of August, 2014

By:_____
        Jay Frechter